**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SUZANNE O.,[1]
    Plaintiff,

        v.                                                         Civil No. 3:20cv61

ANDREW M. SAUL,
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act. Suzanne O. ("Plaintiff"), thirty-nine years old at the time of her benefits application, last worked as a subrogation adjuster and as an auto service representative at GEICO. (R. at 25, 46-47, 85.) Plaintiff suffers from fibromyalgia and spine disorders and has alleged that work activities result in significant pain, rending her unable to work on a sustained basis. (R. at 15, 48-49.)

On December 24, 2018, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits. (R. at 10-12.) After exhausting her administrative remedies, Plaintiff now seeks review of the ALJ's decision. Plaintiff argues that the ALJ erred by improperly evaluating Plaintiff's residual functional capacity and by assigning little weight to the opinion of Plaintiff's treating provider, Dr. Steven Ma, M.D. (Pl.'s Mem. in Supp. of Mot. For Summ. J. at 6-15, ECF No. 11 ("Pl.'s Mem.").) Plaintiff also argues that the ALJ erred by failing to properly

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

consider Plaintiff's fibromyalgia symptoms in light of the Fourth Circuit's recent decision in *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83 (4th Cir. 2020). (Pl.'s Suppl. Notification of Fourth Circuit Authority at 1-4, ECF No. 16 ("Pl.'s Suppl. Mem.").)

This matter comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the parties' cross motions for summary judgment, which are now ripe for review. Having reviewed the parties' submissions and the entire record in this case,[2] and for the reasons set forth below, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 10), DENIES Defendant's Motion for Summary Judgment (ECF No. 14), and VACATES and REMANDS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On August 29, 2016, Plaintiff filed an application for disability insurance benefits, alleging disability due to fibromyalgia, hypermobility syndrome, myalgia and myositis, cervicalgia, and anxiety/depression. (R. at 85, 154.) The Social Security Administration denied Plaintiff's claim initially on April 26, 2017, and again upon reconsideration on October 20, 2017. (R. at 85, 103.) Plaintiff requested a hearing before an ALJ, and the hearing was held on October 3, 2018. (R. at 36, 129-30.) On December 24, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 13-27.) On February 12, 2019, Plaintiff requested review of the ALJ's decision, and on December 9, 2019, the Social Security Administration Appeals Council denied Plaintiff's request, rendering the

---

[2]  The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

ALJ's decision as the final decision of the Commissioner. (R. at 1-6, 153.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas*, 983 F.3d at 94 (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005 (per curiam)). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If

substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id.*

### III. THE ALJ'S DECISION

On October 3, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 36-66.) On December 24, 2018, the ALJ issued a written opinion finding that Plaintiff did not qualify as disabled. (R. at 13-27.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 14-27); 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 22, 2014. (R. at 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia and spine disorders. (R. at 15.) At step three, the ALJ determined that neither of these impairments,

individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 18-25.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> The claimant can climb ramps and stairs frequently and climb ladders, ropes, or scaffolds occasionally. She is able to occasionally crawl and frequently balance, stoop, kneel, and crouch. She can frequently reach overhead bilaterally. The claimant can perform work at unprotected heights occasionally and she can have exposure to vibration occasionally. In addition to normal breaks, the claimant would be off task five percent of the time during an eight-hour workday. Due to pain, the claimant is limited to unskilled work.

(R. at 18.) The ALJ explained this determination by summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff had functional limitations that were not as severe as Plaintiff alleged. (R. at 18-25.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform her past relevant work. (R. at 25.) The ALJ concluded that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 25.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 26.) The ALJ weighed the testimony of the vocational expert, who opined that, given the residual functional capacity above, the Plaintiff could perform the requirements of occupations such as hand collator, egg candler, and hand bander. (R. at 26.). The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in

5

significant numbers in the national economy. (R. at 26-27.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 27.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred (1) in evaluating Plaintiff's residual functional capacity by failing to properly consider the evidence related to Plaintiff's fibromyalgia such as her subjective complaints of pain and resulting absenteeism; and (2) by improperly assessing the opinion of Plaintiff's treating provider, Dr. Ma. (Pl.'s Mem. at 3, 6-15; Pl.'s Suppl. Mem. at 1-4.) For the reasons set forth below, the ALJ erred in denying Plaintiff's application for benefits.

### A. The ALJ Erred in Evaluating Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ erred in evaluating her residual functional capacity by improperly evaluating Plaintiff's fibromyalgia and associated symptoms, specifically Plaintiff's subjective complaints of pain and absenteeism. (Pl.'s Mem. at 6-10; Pl.'s Suppl. Mem. at 1-4.) Defendant responds generally that the ALJ properly considered the evidence and accounted for the limitations that the evidence supported. (Def.'s Mot. For Summ. J. and Br. in Supp. Thereof at 17-22, ECF No. 14 ("Def.'s Mem.").) Each of Plaintiff's arguments are addressed in turn below.

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. § 404.1545(a). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [the claimant's] ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.920(a)(4)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. § 404.1545(b), (c). The

residual functional capacity formulation must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. § 404.1529(a).

When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. § 404.1529(a); *Craig*, 76 F.3d at 594. The first step of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. § 404.1529(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second step and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595.

At the second step, the ALJ determines the extent to which the pain impairs the claimant's ability to work, which requires the ALJ to consider objective medical evidence and other objective evidence, as well as the claimant's allegations. *Id.* "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id.* at 595.

The Fourth Circuit recently confirmed this standard, explaining that an ALJ "may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." *Arakas*, 983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5 (March 16, 2016)). The Fourth Circuit explained that by discrediting a plaintiff's complaints based on the lack of objective medical evidence corroborating them, an ALJ improperly increases the plaintiff's burden of proof. *Id.* at 96.

This standard is particularly important in a case involving fibromyalgia; a disease whose symptoms are "entirely subjective" and objective indicators such as laboratory tests do not indicate the presence or severity of symptoms. *Id.* at 91, 96 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Accordingly, in a fibromyalgia case, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.* at 97. If objective medical evidence is considered at all, "such evidence—along with consistent trigger-point findings—should be treated as evidence *substantiating* the claimant's impairment." *Id.* at 97-98; *see also* SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (explaining how ALJ's should evaluate evidence related to fibromyalgia).

<u>1. The ALJ Erred in Evaluating Plaintiff's Subjective Complaints of Pain, and the ALJ's Evaluation is Not Supported By Substantial Evidence.</u>

In the instant action, at step one of the *Craig* analysis, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (R. at 19.) In conducting step two of the *Craig* analysis, the ALJ outlined Plaintiff's subjective complaints, including that her impairments caused difficulty with activities such as "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing,

8

climbing stairs, seeing, using hands, understanding, following instructions, getting along with others, completing tasks, memorizing, and concentrating." (R. at 18-19.) The ALJ also considered Plaintiff's hearing testimony, where she testified about "pain in her bilateral shoulders, back, hips, and neck base of the skull, as well as muscle tightness and difficulty sitting and standing." (R. at 19.) The ALJ recited Plaintiff's estimation that she could sit or stand for thirty minutes to one hour at a time. (R. at 19.)

Additionally, the ALJ considered the medical evidence, including treatment records from: Nurse Practitioner Julie Warford; physical therapists at Select Physical Therapy; Plaintiff's treating physician, Dr. Ma; a single evaluation from Prince William Neuroscience Center; a chiropractor at Desiring Health Chiropractic; and a single evaluation from Dr. Kevin Hicks at Collaborative Arthritis Care. (R. at 19-21.) The ALJ detailed radiographical and diagnostic imaging ordered by Plaintiff's treatment provider and explained that no significant abnormalities were identified over several different exams. (R. at 20.)

After the ALJ reviewed Plaintiff's testimony and the medical evidence, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent because the degree of severity alleged lacks support and consistency with the other evidence of record." (R. at 21.) The ALJ explained:

> The claimant has been treated primarily with medications and physical therapy, which appear to have been relatively effective in controlling her symptoms when she was compliant with treatment. Despite alleging significant functional limitations, the treatment notes, *examination findings and objective diagnostic testing results* simply do not support the degree of limitation that the claimant alleged. While the claimant has some physical impairments, there is no evidence that her impairments cannot be controlled or remedied with medication and appropriate treatment.

(R. at 21 (emphasis added).)

9

The ALJ's analysis of Plaintiff's subjective complaints is legally erroneous. First, the ALJ relied on objective medical evidence to discredit the intensity, persistence and limiting effects of Plaintiff's pain. (*See* R. at 21.) The ALJ extensively detailed the medical evidence demonstrating largely normal findings, and stated that such examination findings and diagnostic tests do not support the degree of limitation that Plaintiff alleged. (R. at 19-21.) By doing so, the ALJ relied on the lack of objective medical evidence to discount the Plaintiff's subjective complaints of symptoms related to fibromyalgia, and improperly increased Plaintiff's burden of proof to establish the intensity, persistence, and limiting effects of her symptoms.

Moreover, as in *Arakas*, the record evidence supports that Plaintiff had specific trigger point findings—evidence which "should be treated as [] *substantiating* [Plaintiff's] impairment." *See Arakas*, 983 F.3d at 97-98; SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (noting that a doctor may diagnose fibromyalgia by finding "at least 11 positive tender points on physical examination."). Here, both Nurse Practitioner Warford and Dr. Ma found that Plaintiff exhibited sixteen out of eighteen fibromyalgia tender points. (R. at 365, 674). Thus, if any objective medical evidence is used to evaluate Plaintiff's claim, the ALJ should have considered this evidence as corroborating Plaintiff's subjective complaints.

Defendant contends that this case is unlike *Arakas* because there, the ALJ placed "'undue emphasis on [the plaintiff's] normal clinical and laboratory results'" and relied on objective medical evidence as the "'chief'" or "'definitive'" reason to discount the intensity of Plaintiff's complaints. (Def.'s Suppl. Br. at 3, ECF No. 18 ("Def.'s Suppl. Mem.") (quoting *Arakas*, 983 F.3d at 97).) Defendant argues that the ALJ here did not place such emphasis on Plaintiff's normal results, and the ALJ pointed to other evidence such as Plaintiff's conservative and effective treatment in discrediting Plaintiff's complaints. (Def.'s Suppl. Mem. at 3-4.)

10

However, review of the ALJ's decision demonstrates that the ALJ relied heavily on the lack of objective medical evidence to find that Plaintiff's statements regarding her symptoms were not as severe as alleged. (*See* R. at 20 (discussing Plaintiff's MRI and diagnostic imaging results); 21 (discussing testing of Plaintiff's strength in her extremities).) Moreover, the ALJ explicitly stated that "the treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleged." (R. at 21.) Taken together, the evidence demonstrates that the ALJ improperly relied on normal medical findings to discredit Plaintiff's subjective complaints.

2. Substantial Evidence Does Not Support the ALJ's Evaluation of Plaintiff's Credibility.

Similarly, substantial evidence does not support the ALJ's evaluation of Plaintiff's credibility. Like in *Arakas*, the ALJ here failed to consider the unique nature of fibromyalgia, which produces waxing and waning symptoms and limited treatment options. *Arakas*, 983 F.3d at 101-02.

In support of the ALJ's conclusion to discredit Plaintiff's subjective complaints, the ALJ explained that Plaintiff "has been treated primarily with medications and physical therapy, which appear to have been relatively effective in controlling her symptoms when she was compliant with treatment." (R. at 21.) However, treatment for fibromyalgia "include[s] both medication and self-care strategies." *Arakas*, 983 F.3d at 102. Thus, Plaintiff's treatment was not unusual for a person with fibromyalgia. Moreover, the ALJ cited no evidence that Plaintiff's symptoms appear to be controlled when she took medication or attended physical therapy. (*See* R. at 21.) To the contrary, the evidence cited by the ALJ, as well as other evidence in the record, suggests that Plaintiff's response to medication and physical therapy was, at best, inconsistent. Only Nurse Practitioner Warford and Dr. Ma regularly administered medication to Plaintiff. (*See* R. at 19-21.) The

11

treatment notes from Nurse Practitioner Warford demonstrate waxing and waning symptoms, and an attempt find the correct treatment for Plaintiff's persistent pain. (*See* R. at 359 (noting Plaintiff is taking medication without relief); 368 (severity of pain worsening); 373 (Plaintiff is taking medications without relief); 386 (stable on current medications).) As for Dr. Ma, the record is clear that he was prescribing Plaintiff medication. (*See, e.g.,* R, at 439, 464-65, 479.) However, Dr. Ma's treatment notes are entirely illegible, (*see, e.g.*, R. at 510-18), and it is impossible to discern from those treatment notes alone how Plaintiff's symptoms changed in response to changes in medication.

With respect to the ALJ's statements that Plaintiff's symptoms improved with physical therapy, those records similarly demonstrate waxing and waning symptoms. For example, the ALJ highlighted that on February 20, 2018, Plaintiff rated her pain level on that particular day as a three out of ten, and reported that at best, her pain was rated as a one out of ten. (R. at 20, 733.) However, the ALJ failed to note that, during that same visit, Plaintiff stated that at worst, her pain was rated as a nine out of ten. (R. at 733.) Other than these records, the ALJ cited to no evidence, nor is there any in the record, that Plaintiff's symptoms appeared to be controlled. Accordingly, the ALJ's decision is unsupported by substantial evidence.

<u>3. Because Remand is Warranted for the ALJ to Reconsider Plaintiff's Fibromyalgia, the ALJ Should Also Reconsider Plaintiff's Degree of Absenteeism.</u>

Plaintiff argues that the ALJ erred by not considering Plaintiff's ability to work without undue absenteeism. (Pl.'s Mem. at 6-10.) Specifically, Plaintiff contends that the ALJ failed to consider evidence, submitted by Plaintiff, that while employed at GEICO, Plaintiff missed an average of three and a half days per month. (Pl.'s Mem. at 8-9.) Because the Vocational Expert testified that an individual who misses seven to ten days of work annually would be subject to firing at the employer's discretion, Plaintiff contends that her absenteeism renders her unable to

12

maintain competitive employment. (Pl.'s Mem. at 9.) Plaintiff also argues that the ALJ failed to appreciate the waxing and waning nature of fibromyalgia symptoms in considering her degree of absenteeism. (R. at 10.) Defendant contends that the ALJ explained that the decision involved consideration of "all of the evidence" and "the entire record," and that evidence regarding Plaintiff's leave records from a job she performed prior to her onset date do not establish that she would be absent on a basis that would render her unable to work. (Def.'s Mem. at 22-23.)

As previously explained, the ALJ erred in evaluating Plaintiff's subjective complaints of pain regarding her fibromyalgia symptoms. Because remand is warranted on this ground, on remand, the ALJ should also consider the degree to which Plaintiff's fibromyalgia symptoms affect her level of absenteeism.

### B. The ALJ Erred By Assigning Dr. Ma's Opinion Little Weight.

Plaintiff also argues that the ALJ erred by assigning little weight to the opinions of Plaintiff's treating physician, Dr. Ma. (Pl.'s Mem. at 10-15.) Plaintiff contends that Dr. Ma's opinions were entitled to controlling weight because they were well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with other substantial evidence in the record. (Pl.'s Mem. at 14-15.) Defendant argues that Dr. Ma's opinions on Plaintiff's employability are reserved for the Commissioner, and that Dr. Ma's opinions were inconsistent with other medical evidence in the record. (Def.'s Mem. at 26-30.)

In general, an ALJ must consider all medical opinions in the record. § 404.1527(c). An opinion provided by a treating source, however, is given special significance by the regulations. § 404.1527(c)(2). A treating source is a "medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." § 404.1527(a)(2). Under the "treating physician rule,"

an ALJ must give a medical opinion from a treating source controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence." § 404.1527(c)(2); *see Arakas*, 983 F.3d at 106; SSR 96-2p, 1996 WL 374188 (July 2, 1996).[3] In other words, the opinion of a treating source "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by other substantial evidence in the record." *Arakas*, 983 F.3d at 107.

If a medical opinion from a treating source is not entitled to controlling weight, the ALJ must consider certain factors to determine the weight to afford the opinion. *Id.* at 106 (citing § 404.1527(c)(2)–(6)). In deciding the appropriate weight to assign a medical opinion, whether that opinion is a non-treating source opinion or a treating source opinion that is not entitled to controlling weight, an ALJ must consider the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. § 404.1527(c)(2)–(6).

Generally, a reviewing court should not disturb an ALJ's decision regarding the weight given to a medical opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular

---

[3] Effective March 27, 2017, the Social Security Administration rescinded SSR 96-2p and what is known as the "treating physician rule." 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her application for benefits in 2016, (R. at 85, 154), before the Social Security Administration rescinded the rule.

14

opinion." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992) and § 404.1527(d) (1998)).

Dr. Ma's treatment relationship began with Plaintiff on July 25, 2014. (R. at 674.) Between then and Plaintiff's hearing date on October 3, 2018, Plaintiff visited Dr. Ma at least fifty-three times. (R. at 435-559, 587-637, 647-68, 694-732.) Dr. Ma's records reflect that he monitored Plaintiff's condition with regular visits and laboratory studies over a period of at least four years. Although Dr. Ma had a longstanding treatment relationship, it is almost impossible to discern his longitudinal findings over that period of time as his day-to-day treatment notes are almost entirely illegible. (*See, e.g.*, R. at 510-18.)

Other than his day-to-day treatment notes, Dr. Ma provided two opinions regarding Plaintiff's condition relevant to this appeal. First, on December 9, 2016, Dr. Ma completed a "Fibromyalgia Questionnaire." (R. at 674-75.) On that form, Dr. Ma indicated that Plaintiff meets the American Rheumatological Association's criteria for a fibromyalgia diagnosis because she had sixteen out of eighteen possible tender points—only eleven of which are required for a fibromyalgia diagnosis. (R. at 674.) Although Dr. Ma did not physically examine Plaintiff for these tender points during each visit, Dr. Ma opined that the tender points would be reasonably likely to exist from one exam to the next. (R. at 675.) The questionnaire directed Dr. Ma to review a Functional Capacity Evaluation report and to complete a Demonstrated Functional Capacities Form. (R. at 675.) The Functional Capacity Evaluation report was completed by physical therapist Amanda Gallagher upon Dr. Ma's referral. (R. at 564-584.) The Demonstrated Functional Capacities Form indicated "please refer to the attached [Functional Capacity Evaluation] for a list of reasonable restrictions, if applicable." (R. at 586.) The form was signed by both Ms. Gallagher and Dr. Ma. (R. at 586.)

Second, on August 21, 2017, Dr. Ma provided a written opinion as to Plaintiff's condition. (R. at 670-72.) In that opinion, Dr. Ma explained that Plaintiff meets the diagnosis of fibromyalgia "using both the 1990 American College of Rheumatology Criteria and also using the 2010 College of Rheumatology Criteria." (R. at 670.) Dr. Ma explained that on most days, Plaintiff's pain is rated as a six or seven out of ten, despite the fact that she uses pain medication. (R. at 670.) Dr. Ma stated that "[d]uring a 7-day week [Plaintiff] typically experiences 3 bad days when she can do very little, 3 medium days when she can do somewhat more, and 1 good day a week when [s]he can do more but is still limited." (R. at 671.) Further, Dr. Ma explained that "[w]hen she pushes too hard, [Plaintiff] typically suffers a flare up of pain, fatigue and other symptoms that last for 24 hours or more." (R. at 671.) In according with Social Security Ruling 12-2p, Dr. Ma calculated Plaintiff's total Symptom Severity Score as a twelve out of twelve possible points. (R. at 671.) Dr. Ma also explained that, although patients with severe or disabling fibromyalgia usually have relatively normal physical examinations and findings, Plaintiff did exhibit sixteen out of eighteen fibromyalgia tender points and widespread allodynia.[4] (R. at 671.)

With respect to Dr. Ma's day to day treatment notes, the ALJ recognized that the notes are "difficult to read" but found that they demonstrated Dr. Ma prescribed Plaintiff medication for fibromyalgia and other physical conditions during the period of his treatment with Plaintiff. (R. at 20.) The ALJ went on to evaluate various radiographic studies of Plaintiff's elbow, diagnostic imaging of Plaintiff's right hip, a study of Plaintiff's liver, radiographic studies of Plaintiff's

---

[4] Allodynia is a type of nerve pain and is defined as "'pain due to a stimulus that does not normally provoke pain.' An example would be a light feather touch (that should only produce sensation), causing pain." *Allodynia*, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK537129/ (last visited March 23, 2021).

16

cervical spine, and an MRI of Plaintiff's lumbar spine. (R. at 20.) The ALJ stated that generally, each of these objective medical tests demonstrated no significant findings. (R. at 20.)

The ALJ then evaluated Dr. Ma's 2016 opinion. First, the ALJ recognized that Dr. Ma is Plaintiff's treatment provider and had the opportunity to personally examine Plaintiff and consider her history. (R. at 23.) However, the ALJ afforded Dr. Ma's 2016 opinion little weight because "[t]he evidence of record, including treatment notes that do not contain objective physical examination abnormalities that would support the significant limitation, does not support his opinion" and "Dr. Ma declined to offer any specific functional limitations." (R. at 23.) Additionally, the ALJ stated that Dr. Ma's opinion was inconsistent with the evidence of record, including treatment notes demonstrating that conservative treatment was effective in controlling Plaintiff's symptoms. (R. at 23.)

As for Dr. Ma's 2017 opinion, the ALJ again recognized Plaintiff's treatment relationship with Dr. Ma, but stated that

> his opinion is not generally supported by the evidence record, and appears to somewhat overstate the claimant's limitations, including his limitations regarding making occupational adjustments and exertional limitations, as compared to what is indicated by the claimant's treatment during the period at issue and examination results that do not support these limitations.

(R. at 24.) The ALJ also stated "the treatment notes do not contain objective physical examination abnormalities that would support the significant limitations." (R. at 24.)

The ALJ erred in evaluating Dr. Ma's opinions for several reasons. First, the ALJ erred in assigning Dr. Ma's opinions little weight, because fibromyalgia does not produce objective physical findings. Here, the ALJ rejected both of Dr. Ma's opinions on the grounds that Dr. Ma's treatment notes do not contain objective physical examination abnormalities that would support the limitations. (R. at 23 (2016 opinion), 24 (2017 opinion).) However, as explained above,

17

physical examinations of persons with fibromyalgia typically yields "normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Arakas*, 983 F.3d at 96 (citing *Green-Younger*, 335 F.3d at 109-09 (2nd Cir. 2003)). Additionally, as the Fourth Circuit explained in *Arakas*, the absence of objective physical abnormalities is not a sufficient basis to reject a treating physician's opinion in fibromyalgia cases. *Id.* at 106 ("a lack of support from objective medical evidence means very little in fibromyalgia cases"). This is especially true here, where Plaintiff had sixteen out of eighteen tender points to support a diagnosis of fibromyalgia.

Second, the ALJ applied an improper legal standard by finding that Dr. Ma's opinions lack support in the record. (*See* R. at 23-24.) As the Fourth Circuit reiterated in *Arakas*, an ALJ may not afford a treating physician's opinion less than controlling weight merely because the opinion lacks support in the record. *Arakas*, 983 F.3d at 107. Rather, the ALJ "*must*" give the opinion controlling weight, "*unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by other substantial evidence in the record." *Id*. Here, the ALJ did not evaluate whether Dr. Ma's opinions were based on unacceptable methods or contradicted by other evidence in the record.

Third, the ALJ afforded Dr. Ma's 2016 opinion little weight in part because "treatment notes show[] that the claimant's treatment and medications were generally effective in controlling her symptoms." (R. at 23.) However, as explained above, the ALJ's conclusion that treatment notes demonstrate an improvement in Plaintiff's condition with medication is unsupported by substantial evidence. The ALJ failed to explain what evidence demonstrates that Plaintiff's medication and treatment improved her symptoms, which symptoms improved and to what degree, and overall

failed to appreciate the waxing and waning nature of Plaintiff's symptoms. Accordingly, the ALJ erred by assigning Dr. Ma's opinions little weight.

Finally, it is difficult for this Court to review the ALJ's decision to afford Dr. Ma's opinions little weight given the illegibility of Dr. Ma's treatment notes. (*See e.g.*, at R. at 435-559, 587-637, 647-668, 694-732.) As explained by another court in this circuit, "if the ALJ did not know what an important part of the record, *i.e.*, the treating physician's notes, said, how could the ALJ find that [the treating physician's opinion] was 'inconsistent with the record as a whole?'" *Holmes v. Comm'r of Soc. Sec.*, No. 7:07cv543, 2008 U.S. Dist. LEXIS 106267, at *13 (W.D. Va. Oct. 31, 2008). If the ALJ could discern Dr. Ma's treatment notes, she was required to explain how the information contained in those notes supported her conclusion that Plaintiff's symptoms improved with medication and treatment. If the ALJ could not decipher Dr. Ma's treatment notes, the ALJ was obliged to recontact Dr. Ma and attempt to fill in any gaps in Plaintiff's treatment notes. *See* § 404.1512(b); SSR 85-16, 1985 WL 56855, at *3 (Jan. 1, 1985) ("When medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain more detailed information. Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and [residual functional capacity] before obtaining evidence from any other source on a consultative basis.") Accordingly, the ALJ should have explained how Dr. Ma's treatment notes supported her conclusion to afford the opinions little weight or contacted Dr. Ma to further detail his observations.

In sum, the ALJ applied an improper legal standard in her evaluation of Dr. Ma's opinions and relied on evidence not relevant to a fibromyalgia case in reaching her conclusions. On remand, the ALJ should ensure the record is complete with respect to Dr. Ma's treatment notes.

## V. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgement (ECF No. 10) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 14) be DENIED, and that the final decision of the Commissioner be VACATED and REMANDED.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: March 30, 2021